Christopher Kelleher Good morning, Your Honors. Christopher Kelleher for the Appellant. The these 111 pages can be distilled to a simple question. Do the words good faith mean anything? This simplicity belies the gravity of what is at stake. Let me hold on. I'm sorry to interrupt you. Can I just confirm, Mr. Simpson, I know you're remote. I just want to be sure that you can hear us in the courtroom. You're on mute. Yeah, unmute yourself. Thank you for asking, Your Honor. I'm actually having a little bit of trouble hearing Mr. Kelleher. I'm going to try putting on headphones and hope that helps. Okay, we're going to start from the top. That's my mistake. All right. Thank you. Thank you, Your Honor. Can you hear me with the headphones on? Yes, I can. Okay. Everyone can see Mr. Kelleher is coming through. Yeah. Okay. And can you hear me, Mr. Simpson? Yes, I can hear a little better now. Okay. All right. Let's start anew. Okay. Good morning, Your Honor. Thank you. Christopher Kelleher for the appellant. The parties have presented the court with 111 pages of briefing to read. And these 111 pages can be distilled to a simple question. Do the words good faith mean anything? This simplicity belies the gravity of what is at stake. An affirmance here, at the risk of sounding alarmist, would be the Fourth Amendment's exception, despite misleading a magistrate, the warrant process would become a sham. So how important do you think it is, Mr. Kelleher, that, at least certainly as I understand the law, the state court's view of this warrant and the evidence and whether there was a lawful search wasn't binding on the decision? And so, for whatever good, bad, or indifferent reasons the officer may have had, what we're talking about is withholding unnecessary information from the magistrate. Certainly, Judge Wood. I would agree that the state court ruling is not binding. However, it's instructive. And in this court, obviously, this panel noted in the direct appeal that it would inform the federal magistrate's decision. Another point being that the state court ruling is informative in the sense that this was a suppression. And the vast majority of suppression rulings go in the state's favor. So the fact that this was a suppression ruling in favor of the defendant would naturally pique the magistrate's interest in the fact that this was a relative anomaly. But Mr. Kelleher, how do you get around here? We're at habeas, and you know that's a big hill to climb. Certainly. There has to be a prejudice element that you can satisfy. And here, the state court suppressed the evidence on the basis of the initial confrontation and the initial stop, which we found, in our prior opinion, was constitutional. So if that had been disclosed to the district court, how could that have been—to the in issuing the warrant, how could that have been material to the court's determination when we found that the basis the state court suppressed on was wrong, that it was constitutional? Certainly. Judge, the problem here, I think, we have is we have a detention ruling by the state court finding the detention was illegal. And then we have an arrest ruling by this court that there was not probable cause for, I should say, the search. So basically, Mr. Lickers has prevailed on all stages of the initial detention and then the arrest, yet he still is convicted in serving his time. But let's say the court had found that the agent intentionally withheld this suppression and should have disclosed it. But the information still has to be material. And how would the fact that the agent did not disclose that the state court suppressed the evidence on an incorrect basis, how could that be material? Well, it's material in the sense that it negates or at least is adverse to the probable cause determination. And I understand your position. It might not go directly— It doesn't go to the probable cause in the affidavit to search the phone because we said the basis that the state court suppressed on was wrong, that it was constitutional. And, Your Honor, I guess the best answer I can give is the failure to disclose, which was obviously we assert was intentional, it failed to disclose the entire picture of what was at stake here. And the fact that this situation, we had very little, basically no evidence. The affidavit was it. So if this was a situation where we had four other streams of evidence, we had a confidential informant, wiretaps, et cetera, my position would be much weaker. But the fact here is the affidavit was it. Agent Telesek knew that. He knew that the state court had rejected this case. They were on thin ice. And he had to do everything he could to save this warrant. And obviously, and I agree, Judge Wood, your question about the binding nature, it's certainly not binding. But that's not what the test is. The test is, is it material? But that's my question. Just let me. That's the question, is how is it material if we have already rejected the basis that the state court suppressed on? Well, I guess I would say it was the fact that this was, your ruling was years later in the sense that that wasn't before the magistrate at that time. So it's not a law of the case question. It's a, we ruled one way, assuming the district court or the magistrate judge would have found the same way. Correct. So what I want to do is maybe change the focus a little bit and ask why, in light of what is a somewhat unusually confused record, you know, the state court looking at things certain ways and making certain decisions, faced with all of that, why do we, why should we find that Dalton performed ineffectively for purposes of the Sixth Amendment? Because actually that's where we are. We're not here revisiting whether there should have been a search or anything. We're here to see if he received the assistance of counsel to which he was entitled. And this was a messy situation. And we have things such as the fact that we have an objective reasonableness standard. We have lots of things that might have made a rational lawyer think, you know, that this just wasn't going to go anywhere. Certainly, Judge Wood. The simple answer is we're here this morning. And the fact that we're here this morning because this court, to its credit, recognized this gaping hole in this case. Well, we recognize that there's something to talk about. I'm not sure we put that word on it. Certainly. But the fact that the court on its own, sua sponte, recognizes, and I know the court doesn't like to create more work for itself, but to its credit, recognized there was something wrong here. And obviously, Mr. Lickers took that and ran with it in the habeas petition. But the other point would be that Mr. Dalton did challenge the affidavit on the probable cause grounds and obviously did a good job with that. But the fact that he knew that he could challenge this warrant and does so but then leaves out this critical. How could it be deficient performance to challenge the evidence on the same basis that you were successful on in state court? Well, because the falsity slash reckless disregard for the truth, that would be just a stronger argument to make, I think. Because, I mean, obviously, on the cases that I've read, it's usually, for the most part, an open and shut case. The officer lied slash withheld this critical information versus when you delve into the probable cause morass. Well, was this enough? That's a much more intricate, much more arduous argument to make. Obviously, you can make both, and that's what he should have. But he bypassed what I would say is the easier argument. Is my memory right? It's Daniel Dalton, right? Yes. Did Mr. Dalton, didn't he submit an affidavit or declaration in the district court? Yes. OK. Didn't he say in that sworn submission that he basically addressed the point that Judge Wood was asking about and saying, the reason I never raised the issue regarding the phone, essentially, is because the state court rulings really didn't have anything to do with that. The state court rulings were about the propriety or lack thereof of ordering Mr. Lickers out of the car. They were about the delay with the K-9 unit coming that way. So he said, it just didn't dawn upon me. So that's what he submitted. So how can we say, if you take it back to where we're at, Strickland, Prawn 1, IAC claim, how's it been effective, constitutionally effective? Well, because this ruling, this state court ruling, obviously, it casts this case in a bad light for the prosecution. That the case was entirely rejected in the state court. So really, anything, any ammunition. But for reasons having nothing to do with the phone, any state activity vis-a-vis the phone. Yes. And that's correct. But the fact, again, I would just reiterate that it cast this case in a bad light. The state court had rejected it entirely. And the fact that, and I believe the court implied this in its direct appeal, that later on, there might be issues from that initial detention. So the detention, even if the federal court says, OK, the detention's OK, but there might be issues based on the evidence that was obtained from the initial detention. So in other words, that a problematic detention, arguably problematic, might have problems later on, on other subsequent issues, whether it's arrest, whether it's evidence. So again, the initial stage of this case was problematic. Again, that should have tipped off Mr. Dalton that just include it. Make that argument and see where it goes. Again, because this affidavit is it. And Mr. Dalton knew that. He knew that the affidavit was problematic. Yet again, he did not follow that course of action. And the fact, in his declaration, he says, well, it's not binding. Well, again, just as Judge Wood pointed out, binding is not the standard. If that was the standard, certainly we would lose. But the standard is not binding. It's not controlling. It's not, does this completely eradicate probable cause? The question is, does it negate probable cause? Is it adverse? Is it material? And again, adverse, and it may be a matter of semantics, but adverse, it's certainly adverse here when you have a state court throw the entire case out. And can I just interject because time is getting short. This is a complicated area, how tainted warrants intersect with the Leon good faith standard. There seems to be a fairly deep conflict in the circuits on it. And I go back once again to the fact that we're here at part one of Strickland. And to ask Mr. Dalton to sort his way all the way through whether the warrant was tainted to begin with, whether it's even possible for the second officer, Talasek here, to rely on good faith when maybe he isn't giving as much information to the magistrate as he should have done, there are just different ways of looking at this. And for a lawyer to be tarred with ineffective performance is a little harsh, isn't it? It's harsh. But if you look at the affidavit, and I concur with your honor, that this area is a bit complex. But again, he was smart enough to recognize, okay, we can challenge this warrant. But again, he didn't take that second step. But again, the fact that the government in its response brief, they wrote a 58 page response brief, and they've entirely surrendered on this issue of falsity and or reckless disregard for the truth. There was never an affidavit presented in the district court by Mr. Talasek. And that should speak volumes to this court and to the fact that this case is seriously troubling, recognizing the rare nature of habeas relief. I totally understand that. But if there are no further questions, I would proceed. You want to save your time? Thank you. Very well. Okay, Mr. Simpson, over to you. You got to take yourself off mute. Click. There you go. I'm sorry. It's been a while since the pandemic. Good morning, Your Honors. May it please the court. I'm Scott Simpson on behalf of the United States. I'd like to start with something that I think really hasn't been addressed before. That is the fact that this court has already held on direct appeal that the good faith exception applies here. Of course, the only thing that's changed since then is that we now know the federal affidavit affiant was aware of the state court's ruling on Mr. Licker's motion to suppress. But that addition we submit does not change the appropriate outcome here. And we think this court's prior decision makes that clear. Mr. Simpson, this is Judge Wood. Here's the problem that I have. Yes, we did say in the direct appeal. Your Honor, I'm so sorry. I'm having trouble hearing. I don't. Is this better? Yes. Okay, fine. We did say in the direct appeal that the Leon good faith doctrine applied. But there is something peculiar about saying that an officer who in bad faith does not supply all of the relevant information to the issuing magistrate judge is entitled to claim good faith because there's the bad faith in the tainted warrant. And you never know what facts are going to be persuasive or not persuasive to the issuing magistrate judge or whoever the state court judge. And so withholding the fact that these proceedings wound up washing out in the state court and the other aspects of this is actually quite troublesome. Why isn't that a good point? In fact, a compelling point that a competent lawyer should raise. Your Honor, I think there are several points there, and I think, first of all, that it doesn't show bad faith that the agent left that fact out of the affidavit to refer to something that petitioners counsel said. I think it's not a falsity in the affidavit. And I think this court's prior decision reflects that it's not that it's not critical information, which I think is another step back from the facts of this case for a second. I think Judge Wood is Judge Wood is asking a question that that we really do need to grapple with and that Mr. Kelleher has done a good job of framing up.  OK, that is, do you think that Leon good faith protection should apply in a situation where I want you to hypothetically assume forget these facts, hypothetically assume that an affidavit materially or intentionally misrepresented a material fact? Should that affidavit receive Leon protection? But but forget the facts of this case, I understand that, Your Honor, but the affidavit didn't actually misrepresent a fact. Hold on. You're still on the facts of this case. Forget this case. 100% forget this case. I'm asking you hypothetically. Isn't it troubling and inconsistent with the foundation of Leon that if as a factual matter in some hypothetical case, an agent is found to have intentionally misrepresented a material fact? To then confer Leon protection. I would agree, Your Honor, if if the if and I I'll get away from this case as the court has asked me to pretend like you have a case where a previous where an agency, a state agency previously sought a search warrant from a state court and the search the the state court denied that and the and then later on an FBI agent seeks a warrant in the same in the same investigation to pursue the same prosecution. If the federal agent says to the to the federal court, the state court granted a search warrant in this case. Yes, that that would be very problematic. So, Mr. Sensen, if I could just follow up on that a little bit, do you agree then if the district court had found that there was a Frank's violation that Leon good faith could not save the day? Uh, you're saying, Your Honor, if the federal court had found that there was a Frank's violation? Yes, I think that way. I I agree. That would also be very problematic. That's why you're arguing. I think that's why you with all respect. I think that's why you're mistaken with respect to the law of the case doctrine. Because all we could do on the direct appeal or all we did was take the record as it came to us and the record as it came to us on the direct appeal, we had no reason to question the good faith premise. So now the good faith premise is being questioned in 22 55. And there are questions coming up about whether even if there was the omission of something intentionally or recklessly, whether that something is material. Right. I mean, that's that's the conversation we're having, but I don't see the law of the case is resolving anything. It's to to say the law of the case resolves this appeal is to disregard the procedural posture of the two respective appeals. But but, Your Honor, with respect, it seems to me and I I realize I'm I'm talking to the the panel that issued the first decision, although I I I recognize that's not necessarily relevant. It's it's the court's decision. But respectfully, it seems to us that the court's earlier decision reflects, for example, one sentence from the court's decision is the good faith of the FBI agents can be shown without delving into the propriety of their reliance on the fruit of an unconstitutional search as found by the state court. Um, we in other words, the court was saying that we believe the court was saying not following the better practice. And again, to go back, we recognize that the court said that it may have been relevant to the good faith determination. What happened with with with the state search warrant request, the court, we acknowledge the court said the better practice would have been to include that information. But we read the court's early decision as saying that not following that better practice and seeking a warrant does not equate to bad faith in seeking a warrant. There was no evidence that the that the that the FBI agent was hiding information. It was just that he did not put in that information. He didn't put in the fact either way how the state court acted in relation to the request for for warrant. But but in a given case that I mean, just to say he just didn't put it in, if he looked at it and thought it was some devastating fact that would persuade the magistrate judge not to issue the warrant, he would just not put it in. But we have a different record now. That's the purpose of 2255. And we tell people all the time, don't raise a Strickland claim on direct appeal because you're not going to have the right record to allow a sensible decision one way or the other on it. Now, that's just what Mr. Lickers has done. He's raised the 2255 collateral attack and he is and he has more information. In fact, it wasn't until you filed your brief in response to our questions that it became clear that this FBI agent knew all along what the state court had done. It's a little troubling. Your Honor, I'll try to answer that question. But I do want to go ahead and move ahead to the to the ineffective assistance issue since my time is is about half over. But we would submit that there's a difference between hiding a difference between not stating information, a difference between, say, you have you have a question, you have a factual question, did X happen? What happened here is that the FBI agent simply didn't put in there what happened with the state with the state warrant request. Again, if the if the FBI agent had said the state warrant was granted and there was no problem with it, that, yes, would be problematic. But simply not to put in information whose relevance and I'll talk about this in a moment, whose relevance. And I think earlier questions by the court itself reflected that really this what the state court did with the warrant really isn't material to what the federal court should do to it. Just the fact that the FBI agent did not answer that question, just simply left out the yes or no. You could say yes or no. And if he had said no or if he had said yes, that the state warrant was granted and so forth, that'd be problematic. And that's what he did. He attaches the state search warrant as an exhibit. But but that's that's half information, right? I'm sorry, I didn't quite catch that. Mr. Telesak attached the state search warrant. As an exhibit to his affidavit. Yes, he did. So this isn't just I'm not saying anything one way or the other about what happened before. It's a half truth. Also, by attaching it, couldn't you infer, couldn't the court have inferred that it was actually granted at the state court if it was attached? I can understand that, but just just one more point, if I could, on the good faith on the good faith question. And I was going to mention this as well in the ineffective assistance on the ineffective assistance issue. Just two days later, this very same FBI agent submitted a complaint affidavit to the very same federal district court judge, Chief Judge Darrow. And in that second affidavit, two days later, he did include the status of the of the state search warrant. So I think I think that in addition to all that we've already talked about, I think that goes an additional distance to showing that he wasn't acting in bad faith. He just didn't include that fact. If if he had if he had been trying to hide something, surely he would have known that putting that back in the in the second affidavit would certainly have have invited the ire of the of the federal district court judge. But if I could move on to the to the ineffective assistance issues, your honors, as always under Strickland, we need to look at the situation as defense counsel saw it at the time. And what counsel saw is that the state court had resolved the motion to suppress based on its views regarding the outset of the encounter that is holding that Mr. Lickers was unlawfully detained. The state court, as we've already acknowledged, never reached the question of whether the search warrant was supported by probable cause to search the devices. And in fact, this court in its decision, as we've already referred to, disagreed with the state's court, state court's view on that unlawful detention issue. And the district judge, in fact, if you look at the district judge's order denying the twenty two fifty five motion, she expressly said that knowing about the state court suppression ruling would not have impacted her analysis on the motion to suppress in federal court. So for all these reasons that we've discussed, the state court's ruling was not relevant to the question before the federal court, that is, whether the warrant was supported by probable cause. We're also talking we've talked already, I believe, in relation to petitioners counsel's argument that these are separate court systems, no matter what the state court said, even if it had reached the warrant question, which it didn't. The state court's views were not binding on the federal court. And finally, referring to the to the different affidavits, because defense counsel were looking at the facts more closely in time than we are. We can look at the we can look at the the dates of the two affidavits and see that they're only two days apart. But Mr. Liquors, his attorneys would have been very aware because they were very close in time to those to the development of those facts. They would have been very aware that the FBI agents search warrant affidavit preceded the complaint affidavit by only two days. And under those circumstances, we really can't expect Mr. Liquors, his attorneys to make that to think that that omission made any difference. In summary, your honors, since the state suppression ruling was irrelevant, the decisions by Mr. Liquors, his trial and appellate attorneys not to include that ruling in seeking suppression in federal court did not constitute deficient performance and did not prejudice the petitioner for the additional reasons that we've talked about in our briefing. So unless there are any further questions from the court, we'll ask the court to affirm. OK, very well, Mr. Simpson, Mr. Kelleher, back to you. Thank you, your honors. I think what also gets lost in the mix here is the fact that the suppressed evidence from state court was the basis was used for the federal court warrant. In other words, a state court suppress this evidence and tell us that used that suppressed evidence without informing the magistrate that this evidence had been suppressed as the basis for the federal court warrant. Mr. Kelleher, I thought I remembered, though, that at the twenty two fifty five stage, the district court. Rejected the idea that TELUSAC was not acting in good faith. It did. I thought this was a fact finding to which we owe some attention. Yes, your honor. But but the fact that in the in the original the original affidavit in the federal court for the federal magistrate, the affidavit from Mr. TELUSAC included or I should say the warrant application included suppressed evidence, the video, the horrific video of a sexual assault. Right. So I can just say, you know, page twelve of the district court. She says the court agrees with Attorney Dalton's assessment and for the same reason, finds that Lickers cannot show prejudice even if the FBI agent knew about the state suppression hearing. And even if the Seventh Circuit's decision left this issue unanswered, the court finds that the FBI agent acted in good faith and relying on the federal warrant. And then she goes on and explains why she's thinking that. So I just like your view on how much weight we should put on that finding. Well, I mean, I I would argue that it's it's either a mix. It might be a mixed question of law and fact, which would, you know, difference in a review to novel. But again, I we respectfully and vigorously disagree with that assessment for the simple fact they were able to get affidavits from counsel, but they didn't get one from the agent. I mean, that that should speak volumes. And I recognize my time is up. But again, just just to point out when this court gets a summary judgment decision, usually they, your honor, skip to the appendix. You look at what the what the district court did. Are you bound by what the district court did? No, you don't even it's a de novo review. You don't have to give him deference, but you still want to look at factual determination, right? Clearly erroneous, right? But if there are legal issues, your honors look to see what the district court did. And it's not controlling, but it's good to get to see what the court did. And that would be the same here. The federal magistrate should have looked would would want to know what the state court did, even though it's not found. So thank you for the additional time. Mr. Helleher, thanks to you. I see here you accepted the appointment to represent Mr. Lickers, correct? We very much appreciate that service to him in the court. Mr. Simpson, thanks to you here as well. I was remiss in the first argument, the United States versus Ozadzinski to not recognize Mr. Herman. But I think he knows from the context of the full argument that we very much appreciate his advocacy in that appeal as well. So we'll take this one under advisement. We'll move to.